# SUMMONS - CIVIL

JD-CV-1 Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**See page 2 for instructions**

- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [x] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [ ] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| **One Court Street, Middletown, Connecticut 06457** | **( 860 ) 343-6400** | **August 26, 2014** (Month, Day, Year) |

| [x] Judicial District / [ ] Housing Session | [ ] G.A. Number: | At *(Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349)* | Case type code *(See list on page 2)* |
|---|---|---|---|
| | | **Middletown** | Major: **C** Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| **Sachner & O'Connor, LLC, 765 Straits Turnpike, PO Box 1323, Middlebury, CT 06762** | **005059** |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| **( 203 ) 598-7585** | |

| Number of Plaintiffs: **1** | Number of Defendants: **1** | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name:<br>Address: **MIDDLESEX HOSPITAL, 28 CRESCENT STREET, MIDDLETOWN, CT 06457** | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: **ON ASSIGMENT STAFFING SERVICES, INC., 26745 Malibu Hills Road, Calabasas, CA 91301**<br>Address: **AGENT FOR SERVICE: CT CORPORATION SYSTEM, ONE CORPORATE CENTER, HARTFORD, CT 06103** | D-01 |
| Additional Defendant | Name:<br>Address: | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED**. This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | [x] Commissioner of the Superior Court<br>[ ] Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| | | **S. PETER SACHNER** | **07/14/2014** |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|
| | | |

Name and address of person recognized to prosecute in the amount of $250
**Barbara Beckman, Sachner & O'Connor, LLC, PO Box 1323, Middlebury, CT 06762**

| Signed *(Official taking recognizance; "X" proper box)* | [x] Commissioner of the Superior Court<br>[ ] Assistant Clerk | Date | Docket Number |
|---|---|---|---|
| | | **07/14/2014** | |

| | | |
|---|---|---|
| RETURN DATE: AUGUST 26, 2014 | : | SUPERIOR COURT |
| MIDDLESEX HOSPITAL | : | JUDICIAL DISTRICT OF MIDDLESEX |
| VS. | : | AT MIDDLETOWN |
| ON ASSIGNMENT STAFFING SERVICES, INC. | : | JULY 14, 2014 |

**COMPLAINT**

**ALLEGATIONS COMMON TO ALL COUNTS:**

1. On or about September 17, 2013, Patricia Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall, commenced an action against Middlesex Hospital and On Assignment Staff Services, Inc. (hereinafter "On Assignment"), bearing Docket Number MMX-CV-013-6010510-S (hereinafter "the lawsuit"), alleging that the death of Gloria Hall by suicide was caused by the negligence of the defendants. A copy of that Complaint is attached as Exhibit A (hereinafter referred to as "original Complaint").

2. The original Complaint alleges, inter alia, that on or about October 11, 2011, Gloria Hall was brought to the Middlesex Hospital emergency department by the police after exhibiting unusual behavior and/or having been found to be in an intoxicated state.

3.      At all times relevant to the original Complaint, On Assignment was a foreign

corporation with a business and mailing address of 26745 Malibu Hills Road, Calabasas,

California 91301.

4.      At all times relevant to the original Complaint, Gary Hinds was a nurse licensed

to practice in the State of Connecticut and was an employee, agent, apparent agent and/or servant

of On Assignment.

5.      On or about October 11, 2011, Gary Hinds was assigned to and did provide

nursing services to Gloria Hall at Middlesex Hospital in accordance with a contractual agreement

between Middlesex Hospital and On Assignment.

6.      The original Complaint alleges that, while a patient in the emergency department,

Ms. Hall exhibited unusual and bizarre behavior which was observed and noted by employees,

agents, servants and/or staff of On Assignment, including Gary Hinds.

7.      The original Complaint alleges that at approximately 1:29 am on October 12,

2011, it was discovered that Ms. Hall had hung herself with a bed sheet tied to her hospital bed,

resulting in her death.  Gary Hinds first discovered Ms. Hall's body.

8.      The original Complaint alleges that Ms. Hall's death was caused by the

negligence of Middlesex Hospital and On Assignment, acting through Gary Hinds, in one or

more of the ways enumerated in the original Complaint.

9. The plaintiff in the original Complaint alleges, inter alia, that On Assignment, acting through Gary Hinds, was negligent in the following ways:

a. in that he failed to properly supervisor and/or monitor the plaintiff's decedent in light of her behavior while a patient in the emergency department;

b. in that he failed to perform timely safety checks necessary for proper observation of the patient under the particular circumstances; and

c. in that he failed to properly, regularly and/or timely observe the plaintiff's decedent, in violation of hospital policies and the standard of care of emergency department medicine.

10. The original Complaint alleges that as a result of the aforementioned negligence on the part of On Assignment, Ms. Hall committed suicide by hanging herself in the emergency department, as a result of which her Estate claimed various damages as set forth in the original Complaint.

11. On November 25, 2013, in connection with the lawsuit, Middlesex Hospital and the Estate of Gloria Lisa Hall entered into a settlement agreement under which Middlesex Hospital was obligated to pay the sum of $500,000 in exchange for a release of liability and consequent withdrawal of the lawsuit. A copy of the settlement agreement is attached as Exhibit B.

**COUNT ONE (Contractual Indemnification):**

1-11. The allegations set forth in Paragraphs 1 through 11 of the Allegations Common to All Counts are hereby incorporated and made Paragraphs 1 through 11 of Count One as if set forth fully herein.

12. Prior to the incident alleged in the original Complaint, On Assignment entered into a "Temporary Staffing Agreement" (hereinafter the "contract") with Middlesex Hospital under which On Assignment agreed to provide Middlesex Hospital with qualified and skilled healthcare personnel, including Nurse Gary Hinds, to provide nursing services in accordance with the terms of said contract. On Assignment was compensated by Middlesex Hospital according to the terms of said contract.

13. The aforementioned contract was in effect at the time of the incident alleged in the original Complaint, and governed the rights and responsibilities of Middlesex Hospital and On Assignment at the time of the subject incident.

14. Under Paragraph 5.1 of said contract, under Section 5 entitled, "Indemnification and Insurance," On Assignment agreed to indemnify, defend and hold harmless Middlesex Hospital from and against "any losses to the extent and proportion that such losses relate to or arise from (i) negligent acts or omissions or willful misconduct of On Assignment or any of the

On Assignment indemnitees; or (ii) breach of this Agreement by the On Assignment indemnitees."

15. Middlesex Hospital has incurred considerable expense investigating and defending the original Complaint and the lawsuit brought by the Estate of Gloria Hall, and further was obligated to pay the aforementioned sums in full and final settlement of the lawsuit.

16. If the incident alleged in the original Complaint occurred in one or more of the ways alleged by the plaintiff in the original Complaint, such claim arose from, was related to, or was in connection with the nursing services to be provided by On Assignment, including those services provided by Gary Hinds, under the aforementioned contract, or the failure to provide such services.

17. Middlesex Hospital has expressly denied that it was negligent and/or is liable to the plaintiff in the original Complaint.

18. Middlesex Hospital is entitled to indemnification and reimbursement for all costs of defense and for any losses incurred, including indemnity sums paid in settlement of the lawsuit, for On Assignment's negligence contributing to the losses and damages alleged in the original Complaint, pursuant to the aforementioned indemnification provision of said contract.

19. Middlesex Hospital is entitled to indemnification and reimbursement under the terms of the contract between Middlesex Hospital and On Assignment requiring defense and

indemnification of Middlesex Hospital for any losses relating to or arising from the negligent acts or omissions or willful misconduct of On Assignment or its agents, apparent agents, servants, employees or indemnitees, including Gary Hinds, in one or more of the ways enumerated in the original Complaint, and including but not limited to the following:

a. the failure to properly supervise and/or monitor Ms. Hall while a patient in the emergency department;

b. the failure to perform timely safety checks necessary for proper observation of Ms. Hall under the particular circumstances of her presentation;

c. the failure to properly, regularly and/or timely observe Ms. Hall in violation of hospital policies and/or the standard of care required of emergency department nursing personnel; and

d. the failure to properly and accurately document timely observation of Ms. Hall and the performance of timely safety checks of the patient as required.

**SECOND COUNT (Breach of Contract – Insurance):**

1- 13. The allegations sets forth in Paragraphs 1 through 13 of the First Count are hereby incorporated and made Paragraphs 1 through 13 of the Second Count as if set forth fully herein.

14. Under Paragraph 5.3 of said contract, under Section 5 entitled "Indemnification and Insurance," On Assignment agreed to maintain in full force and effect during the term of the contract professional liability insurance coverage in an amount not less than $1,000,000 per occurrence for nursing personnel employed by On Assignment and provided to Middlesex

Hospital in connection with On Assignment's obligations under the contract. Pursuant to the terms of said contract, On Assignment was to provide Middlesex Hospital with relevant "Certificates of Insurance."

15. On Assignment has breached its contract with Middlesex Hospital in that it has:

(a) failed or refused to demand that its carrier defend and indemnify Middlesex Hospital in connection with the original Complaint and the lawsuit; and

(b) failed to otherwise honor the insurance provision within its contract with Middlesex Hospital.

16. As a result of On Assignment's failure to abide by the applicable insurance provisions of said contract, Middlesex Hospital has incurred considerable expense to investigate and defend the original Complaint and the lawsuit, and further has incurred losses in connection with said lawsuit, all to its financial detriment.

**<u>THIRD COUNT</u> (Common Law Indemnification for Active/Passive Negligence):**

1- 13. The allegations set forth in Paragraphs 1 through 13 of the First Count are incorporated and made Paragraphs 1 through 13 of the Third Count as if set forth fully herein.

14. If the Estate of Gloria Lisa Hall incurred losses and damages as alleged in the original Complaint, such was directly, immediately and proximately caused by the active negligence and carelessness of On Assignment, acting through its employees, servants, agents, or apparent agents, including Gary Hinds, rather than any negligence of Middlesex Hospital.

15. If the Estate of Gloria Hall incurred losses and damages as alleged in the original Complaint, such was directly, immediately and proximately caused by the active negligence and carelessness of On Assignment, acting through its employees, servants, agents, or apparent agents, including Gary Hinds, who was in control of the supervision, monitoring and observation of Ms. Hall at the relevant time prior to her suicide, to the exclusion of Middlesex Hospital.

16. Any losses and damages incurred by the Estate of Gloria Hall as alleged in the original Complaint were directly, immediately and proximately caused by the active negligence and carelessness of On Assignment acting through its employees, servants, agents or apparent agents, including Gary Hinds, in one or more of the following ways:

a. in that he failed to properly supervise and/or monitor Ms. Hall while a patient in the emergency department;

b. in that he failed to perform timely safety checks necessary for proper observation of Ms. Hall under the particular circumstances of her presentation;

c. in that he failed to properly, regularly and/or timely observe Ms. Hall in violation of hospital policies and/or the standard of care required of emergency department nursing personnel; and

d. in that he failed to properly and accurately document timely observation of Ms. Hall and the performance of timely safety checks of the patient as required.

17. Middlesex Hospital did not know of On Assignment's negligence, or its employees', servants', agents' or apparent agents' negligence, including that of Gary Hinds, had

no reason to anticipate it, and reasonably could have relied on On Assignment and/or Nurse Hinds not to have been negligent.

18. There existed an independent legal relationship between Middlesex Hospital and On Assignment.

19. Middlesex Hospital is entitled to indemnification for all costs of defense and for any losses incurred in connection with the original Complaint and the lawsuit for which On Assignment is found to be responsible.

**WHEREFORE**, Middlesex Hospital is entitled to contractual and common law indemnification from On Assignment arising out of losses, costs and expenses in connection with the original Complaint and the lawsuit, including damages for breach of contract, and therefore claims the following relief:

1. A judgment of indemnification and reimbursement from On Assignment for the settlement sums paid to the plaintiff in the underlying lawsuit;

2. Reimbursement of all costs and expenses, including attorneys' fees, court fees and costs in connection with defending the underlying lawsuit; and

3. Such other relief in law and equity as the Court deems proper.

**CERTIFICATE OF REASONABLE INQUIRY**

I hereby certify that I have made reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in the care or treatment of Gloria Lisa Hall. This inquiry has given rise to a good faith belief on my part that grounds exist for an action against the named defendant herein.

S. Peter Sachner
SACHNER & O'CONNOR, LLC
Juris No. 407301

**WHEREFORE**, the plaintiff claims money damages. The amount in demand exceeds $15,0000 exclusive of interest and costs.

I hereby certify that I have knowledge of the financial responsibilities of the plaintiff and deem it sufficient to pay the costs.

Hereof fail not, but of this writ, with your doings thereon, make due service and return according to law.

Dated at Middlebury, Connecticut this 14th of July, 2014.

PLAINTIFF (Middlesex Hospital)

By ______________________

S. Peter Sachner
Sachner & O'Connor
765 Straits Turnpike, Bldg 2, Suite 2000
P.O. Box 1323
Middlebury, CT 06762
203-598-7585
Juris No. 005059

June 6, 2014

S. Peter Sachner
Sachner & O'Connor, LLC
Post Office Box 1323
Middlebury, CT 06762-1323

**Re: Gloria Hall**

Dear Attorney Sachner:

I am currently a licensed registered nurse and certified emergency nurse. I am a practicing hospital emergency department nurse. I am familiar with the standard of care existing in the United States during October of 2011 applicable to nurses working within a hospital emergency department.

I have reviewed the Middlesex Hospital Emergency Department record concerning the admission of Gloria Hall of October 11, 2011 to October 12, 2011, as well as, the City of Middletown Police Department Incident Report, Medical Examiner's Report, and the State of Connecticut Department of Public Health Report of January 12, 2012, with reference to the care provided to Gloria Hall at the Middlesex Hospital Emergency Department on October 11, 2012.

My review indicates that Ms. Hall was admitted to the Emergency Department at Middlesex Hospital on October 11, 2011, pursuant to a Police Emergency Examination Request, after exhibiting unusual behavior and having been found to be under the influence of intoxicants. The Middletown Police Department found the decedent, Gloria Hall, walking in the southbound lane of traffic on Main Street in Middletown, Connecticut, at approximately 9:39 p.m. The police report indicates that she appeared intoxicated and disoriented and that she had been drinking alcoholic beverages and had not taken her daily medications. An ambulance was called and she was transported to the Emergency Department at Middlesex Hospital. The record indicates that the information obtained and behavior observed by police was made available to the personnel at the Emergency Department upon Gloria Hall's arrival at the hospital. My review further indicates that Ms. Hall continued to exhibit bizarre behavior after her admission to the Emergency Department at the Middlesex Hospital. She had multiple attempts to hide from hospital staff, closing the curtains around her bed, pacing her room, and throwing magazines about the room. She was witnessed by hospital staff walking unescorted down hallways of the hospital and using a blanket as a "cape." She further indicated that she had not been totally truthful when she was initially assessed upon arrival at the hospital when she indicated that she had been physically assaulted prior to arrival at the hospital.

Her behavior was ignored and not properly addressed by hospital staff.  No re-assessment took place after her initial presentation. Although she was placed on 15-minute safety checks, it is confirmed that her medical record was falsified and that safety checks did not, in fact, take place every 15 minutes, as required.  At approximately 1:29 AM, the curtain to the patient's room was observed to be closed and when opened the patient was found on her knees having utilized a tied bed sheet to hang herself from the side of her hospital bed.

The standard of care requires that proper action be taken so as not to permit a patient to commit suicide by hanging while in an emergency department examining room.  The standard of care requires that the nursing staff be able to identify patients who might pose a suicide risk; that they be aware of existing hospital and emergency room policies and procedures regarding suicide prevention within the emergency room setting; that they properly assess, monitor supervise and take appropriate measures to care for patients who pose a suicide risk.  Such measures include removal of materials that might be used for suicide and use of a "safe room."  Additionally, the findings and assessments of the emergency room nurses should be adequately charted.

It is my opinion, based upon my review, that there is evidence of negligence by the Middlesex Hospital nursing staff.   It is my opinion that the emergency room nursing staff violated the standard of care in a number of ways, including: failing to properly and adequately assess Gloria Hall's condition after her initial presentation; failing to identify Gloria Hall as a suicide risk in light of her behavior and past history; failing to properly supervisor and/or monitor Gloria Hall in light of her presenting and continued behavior;  allowing the patient to have access to materials that could be used for strangulation; failing to properly and timely observe the patient, in accordance with hospital policies and general policies of emergency department medicine; failing to place the patient in a "safe room" or failing to make the emergency department examination room in fact a "safe room"; failing to obtain medical records of prior admissions indicating suicidal ideation; relying on the statement of the patient, who was clearly under the influence of alcohol and/or drugs, that she was not suicidal; misrepresenting the times that the nurse allegedly examined the patient, when, in fact, records reveal that the patient was not observed in accordance with the timing necessary under these situations; and removing the body and all evidence from the examination room before a reasonable and thorough investigation could be conducted to determine what happened to the patient.

My opinions are based upon my education, training and experience in providing emergency medicine nursing services and upon my review of the information supplied to me as of this time. I reserve the right to supplement and/or amend my opinions as additional information becomes available to me.

Regards,

# **EXHIBIT A**

**SUMMONS - CIVIL**
JD-CV-1 Rev. 9-08
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

See page 2 for instructions

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| ONE COURT STREET, MIDDLETOWN, CT 06457 | (860) 343-6400 | OCTOBER (Month) 22 (Day), 2013 (Year) |
| ☒ Judicial District ☐ Housing Session ☐ G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) MIDDLESEX AT MIDDLETOWN | Case type code (See list on page 2) Major: T Minor: 28 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| RISCASSI AND DAVIS, P.C., 131 OAK STREET, HARTFORD, CT 06106 | 50361 |
| Telephone number (with area code): (860) 522-1196 | Signature of Plaintiff (If self-represented) |

Number of Plaintiffs: 1 | Number of Defendants: 2 | ☐ Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: HALL-JEMISON, PATRICIA, ADMINSITRATRIX OF THE ESTATE OF HALL, GLORIA<br>Address: 15 Carpenter Street, Hartford, CT 06120 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: MIDDLESEX HOSPITAL<br>Address: 28 Crescent Street, Middletown, CT 06457<br>AGENT FOR SERVICE: Vincent J. Capece, Jr., 28 Crescent Street, Middletown, CT 06457 | D-50 |
| Additional Defendant | Name: ON ASSIGNMENT STAFFING SERVICES, INC.<br>Address: 26745 Malibu Hills Road, Calabasas, CA 91301<br>Agent for Service: CT Corporation System, 1 Corporate Center, Hartford, CT 06103 | D-51 |
| Additional Defendant | Name:<br>Address: | D-52 |
| Additional Defendant | Name:<br>Address: | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should ta k to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| [signature] | | MICHAEL C. JAINCHILL | 9/17/13 |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only
File Date

Attest A TRUE COPY
[signature]
PETER J. PRIVITERA
CT STATE MARSHAL
HARTFORD COUNTY

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date |
|---|---|---|
| | | |

Name and address of person recognized to prosecute in the amount of $250
Linda C. Musshorn, RisCassi & Davis, P.C., 131 Oak Street, Hartford, CT 06106

| Signed (Official taking recognizance; "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|
| [signature] John J. Houlihan, Jr. | | 9/17/13 | |

(Page 1 of 2)

RETURN DATE: OCTOBER 22, 2013 : SUPERIOR COURT

PATRICIA A. HALL-JEMISON, ADMINISTRATRIX OF THE ESTATE OF GLORIA LISA HALL : JUDICIAL DISTRICT OF MIDDLESEX AT MIDDLETOWN

V.

MIDDLESEX HOSPITAL; and ON ASSIGNMENT STAFFING SERVICES, INC. : SEPTEMBER 17, 2013

## COMPLAINT

**FIRST COUNT:** **Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall v. Middlesex Hospital**

1. On or about November 3, 2011, the plaintiff, Patricia A. Hall-Jemison, was appointed Administratrix of the Estate of Gloria Lisa Hall by the Probate Court for the District of Middletown, and is duly authorized to act in that capacity.

2. At all times mentioned herein, the defendant, Middlesex Hospital, was a Connecticut hospital which provided medical emergency services at 28 Crescent Street, Middletown, Connecticut.

3. On October 11, 2011, and October 12, 2011, Gary Hinds was a nurse licensed to practice in the State of Connecticut and provided nursing services to patients at Middlesex Hospital.

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

4. At all times mentioned herein, Gary Hinds was an employee, agent, apparent agent, and/or servant of the defendant, Middlesex Hospital.

5. On or about October 11, 2011, at approximately 9:16 p.m., the plaintiff's decedent, Gloria Lisa Hall, was brought to the Middlesex Hospital Emergency Department as a result of a Police Emergency Examination Request, after exhibiting unusual behavior and/or having been found to be under the influence of intoxicants.

6. While a patient in the Emergency Department, the plaintiff's decedent exhibited unusual and bizarre behavior which was observed and noted by employees, agents, servants and/or staff of the defendant hospital, including, but not limited to, Gary Hinds.

7. At approximately 1:29 a.m. on October 12, 2011, while a patient in the Emergency Department, Gloria Lisa Hall's body was discovered hanging by her neck over the side of her hospital bed with a bed sheet tied to both her neck and her hospital bed. She was pronounced dead in Middlesex Hospital at approximately 1:30 a.m. on said date.

8. The defendant, Middlesex Hospital, acting through its employees, agents, apparent agents, including, but not limited to Gary Hinds, violated the standard of care in one or more of the following ways:

a. in that they failed to properly and/or adequately assess the plaintiff's decedent's condition after her initial presentation to the Emergency Department; and/or

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

b. in that they knew, or should have known, that the plaintiff's decedent was a suicide risk, but failed to implement proper measures to prevent her from harming herself; and/or

c. in that they failed to properly supervise and/or monitor the plaintiff's decedent in light of her behavior prior to her being a patient in the Emergency Department; and/or

d. in that they failed to properly supervise and/or monitor the plaintiff's decedent in light of her behavior while a patient in the Emergency Department; and/or

e. in that they allowed the plaintiff's decedent to have access to materials that could be used to harm herself; and/or

f. in that they failed to perform timely safety checks necessary for proper observation of the patient under the particular circumstances; and/or

g. in that they failed to properly, regularly and/or timely observe the plaintiff's decedent, in violation of hospital polices and the standard of care of emergency department medicine; and/or

h. in that they failed to place the plaintiff's decedent in a "safe room"; and/or

i. in that they improperly relied on the statement of the plaintiff's decedent, who was clearly under the influence of alcohol and/or drugs, that she was not suicidal; and/or

j. in that they failed to obtain and/or review the plaintiff's decedent's medical records from prior admissions into Middlesex Hospital, which would have indicated suicidal ideation; and/or

k. in that they failed to provide adequate nursing supervision to prevent injury to the plaintiff's decedent,

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

in violation of Section 19-13-D3 (b) Administration (2) and/or (e)Nursing Service (1) and/or (i) General (6) of the Regulations of Connecticut State Agencies.

9. As a result of the deviations from the standard of care by the defendant, its employees, agents, apparent agents, and/or servants, the plaintiff's decedent, Gloria Lisa Hall, committed suicide by hanging herself at a time when she was a patient in the Emergency Department of the defendant, Middlesex Hospital.

10. As a further result thereof, the ability of the plaintiff's decedent, Gloria Lisa Hall, to pursue and enjoy life's activities, including her ability to earn wages, has been permanently destroyed.

11. As a further result thereof, the plaintiff, Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall, has been forced to incur financial obligations for hospital and medical expenses and funeral and burial expenses for the decedent.

**SECOND COUNT: <u>Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall v. Middlesex Hospital (Spoliation of Evidence)</u>**

1-10. Paragraphs 1 through 10 of the First Count are incorporated by reference as paragraphs 1 through 10 of the Second Count.

11. The defendant, Middlesex Hospital, at the direction of hospital administration, removed the plaintiff's decedent's body and all evidence from the hospital room where she

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

died before a reasonable and thorough investigation could be conducted to determine the facts and circumstances regarding the death of Gloria Lisa Hall.

12. By removing and/or not preserving the evidence, the defendant intentionally spoliated evidence critical to the plaintiff's various factual and legal claims.

13. As a result of the spoliation, the plaintiff may not be able to prove all of the factual and/or legal claims.

14. The plaintiff has been injured by the defendant's spoliation of evidence.

**THIRD COUNT:** **Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall v. On Assignment Staffing Services, Inc.**

1. At all times mentioned herein, Gary Hinds was a nurse licensed to practice in the State of Connecticut and was employee, agent, apparent agent, and/or servant of the defendant , On Assignment Staffing Services, Inc..

2. On or about November 3, 2011, the plaintiff, Patricia A. Hall-Jemison, was appointed Administratrix of the Estate of Gloria Lisa Hall by the Probate Court for the District of Middletown, and is duly authorized to act in that capacity.

3. At all times mentioned herein, the defendant, On Assignment Staffing Services, Inc., was a foreign corporation with a business and mailing address of 26745 Malibu

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

4. At all times mentioned herein, Gary Hinds was an employee, agent, apparent agent, and/or servant, On Assignment Staffing Services, Inc.

5. On October 11, 2011, and October 12, 2011, Gary Hinds provided nursing services to Gloria Lisa Hall at Middlesex Hospital in accordance with a contractual agreement between the defendants, Middlesex Hospital and On Assignment Staffing Services, Inc.

6. On or about October 11, 2011, at approximately 9:16 p.m., the plaintiff's decedent, Gloria Lisa Hall, was brought to the Middlesex Hospital Emergency Department as a result of a Police Emergency Examination Request, after exhibiting unusual behavior and/or having been found to be under the influence of intoxicants.

7. While a patient in the Emergency Department, the plaintiff's decedent exhibited unusual and bizarre behavior which was observed and noted by employees, agents, servants and/or staff of the defendant, On Assignment Staffing, Services, Inc., including Gary Hinds.

8. At approximately 1:29 a.m. on October 12, 2011, while a patient in the Emergency Department, Gloria Lisa Hall's body was discovered hanging by her neck over the side of her hospital bed with a bed sheet tied to both her neck and her hospital bed. She was pronounced dead in Middlesex Hospital at approximately 1:30 a.m. on said date.

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

9. The defendant, On Assignment Staffing Services, Inc., acting through its employees, agents, apparent agents, including Gary Hinds, violated the standard of care in one or more of the following ways:

a. in that they failed to properly and/or adequately assess the plaintiff's decedent's condition after her initial presentation to the Emergency Department; and/or

b. in that they knew, or should have known, that the plaintiff's decedent was a suicide risk, but failed to implement proper measures to prevent her from harming herself; and/or

c. in that they failed to properly supervise and/or monitor the plaintiff's decedent in light of her behavior prior to her being a patient in the Emergency Department; and/or

d. in that they failed to properly supervise and/or monitor the plaintiff's decedent in light of her behavior while a patient in the Emergency Department; and/or

e. in that they allowed the plaintiff's decedent to have access to materials that could be used to harm herself; and/or

f. in that they failed to perform timely safety checks necessary for proper observation of the patient under the particular circumstances; and/or

g. in that they failed to properly, regularly and/or timely observe the plaintiff's decedent, in violation of hospital polices and the standard of care of emergency department medicine; and/or

h. in that they failed to help place the plaintiff's decedent in a "safe room"; and/or

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

    i. in that they improperly relied on the statement of the plaintiff's decedent, who was clearly under the influence of alcohol and/or drugs, that she was not suicidal; and/or

j. in that they failed to obtain and/or review the plaintiff's decedent's medical records from prior admissions into Middlesex Hospital, which would have indicated suicidal ideation; and/or

k. in that they failed to provide adequate nursing supervision to prevent injury to the plaintiff's decedent, in violation of Section 19-13-D3 (b) Administration (2) and/or (e)Nursing Service (1) and/or (i) General (6) of the Regulations of Connecticut State Agencies.

10. As a result of the deviations from the standard of care by employees, agents, servants and/or staff of the defendant, On Assignment Staffing Services, Inc., including Gary Hinds, the plaintiff's decedent, Gloria Lisa Hall, committed suicide by hanging herself at a time when she was a patient in the Emergency Department of Middlesex Hospital.

11. As a further result thereof, the ability of the plaintiff's decedent, Gloria Lisa Hall, to pursue and enjoy life's activities, including her ability to earn wages, has been permanently destroyed.

12. As a further result thereof, the plaintiff, Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Lisa Hall, has been forced to incur financial obligations for hospital and medical expenses and funeral and burial expenses for the decedent.

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

**CERTIFICATE OF REASONABLE INQUIRY**

I hereby certify that I have made a reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in the care or treatment of the plaintiff's decedent, Gloria Lisa Hall. This inquiry has given rise to a good faith belief on my part that grounds exist for an action against the named defendants.

Michael C. Jainchill
RISCASSI & DAVIS, P.C.
Juris No. 50361

Attest
A TRUE COPY
PETER J. PRIVITERA
CT STATE MARSHAL
HARTFORD COUNTY

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

**WHEREFORE**, the Plaintiff claim money damages. The amount in demand exceeds $15,000.00 exclusive of interest and costs.

I hereby certify that I have knowledge of the financial responsibilities of the plaintiff and deem it sufficient to pay the costs.

Hereof fail not, but of this writ, with your doings thereon, make due service and return according to law.

Dated at Hartford, Connecticut, this 17th day of September, 2013.

THE PLAINTIFF,

BY______________________

Michael C. Jainchill
RisCassi and Davis, P.C.
131 Oak Street
P.O. Box 261557
Hartford, CT 06126-1557

Attest
A TRUE COPY

PETER J. PRIVITERA
CT STATE MARSHAL
HARTFORD COUNTY

RISCASSI & DAVIS, P.C.
ATTORNEYS-AT-LAW
131 OAK STREET
P. O. BOX 261557
HARTFORD, CT 06126-1557
(860) 522-1196
JURIS NO. 50361

May 18, 2013

Michael C. Jainchill, Esq.
RisCassi & Davis, P.C.
131 Oak Street
Hartford, CT 06106

**Re: Gloria Hall**

Dear Attorney Jainchill:

I am currently a licensed registered nurse and certified emergency nurse. I am a practicing hospital emergency department nurse. I am familiar with the standard of care existing in the United States during October of 2011 applicable to nurses working within a hospital emergency department.

I have reviewed the Middlesex Hospital Emergency Department record concerning the admission of Gloria Hall of October 11, 2011 to October 12, 2011, as well as, the City of Middletown Police Department Incident Report, Medical Examiner's Report, and the State of Connecticut Department of Public Health Report of January 12, 2012, with reference to the care provided to Gloria Hall at the Middlesex Hospital Emergency Department on October 11, 2012.

My review indicates that Ms. Hall was admitted to the Emergency Department at Middlesex Hospital on October 11, 2011, pursuant to a Police Emergency Examination Request, after exhibiting unusual behavior and having been found to be under the influence of intoxicants. The Middletown Police Department found the decedent, Gloria Hall, walking in the southbound lane of traffic on Main Street in Middletown, Connecticut, at approximately 9:39 p.m. The police report indicates that she appeared intoxicated and disoriented and that she had been drinking alcoholic beverages and had not taken her daily medications. An ambulance was called and she was transported to the Emergency Department at Middlesex Hospital. The record indicates that the information obtained and behavior observed by police was made available to the personnel at the Emergency Department upon Gloria Hall's arrival at the hospital. My review further indicates that Ms. Hall continued to exhibit bizarre behavior after her admission to the Emergency Department at the Middlesex Hospital. She had multiple attempts to hide from hospital staff, closing the curtains around her bed, pacing her room, and throwing magazines about the room. She was witnessed by hospital staff walking unescorted down hallways of the hospital and using a blanket as a "cape." She further indicated that she had not been totally truthful when she was initially assessed upon arrival at the hospital when she indicated that she had been physically assaulted prior to arrival at the hospital.

Her behavior was ignored and not properly addressed by hospital staff. No re-assessment took place after her initial presentation. Although she was placed on 15-minute safety checks, it is confirmed that her medical record was falsified and that safety checks did not, in fact, take place every 15 minutes, as required. At approximately 1:29 AM, the curtain to the patient's room was

observed to be closed and when opened the patient was found on her knees having utilized a tied bed sheet to hang herself from the side of her hospital bed.

The standard of care requires that proper action be taken so as not to permit a patient to commit suicide by hanging while in an emergency department examining room. The standard of care requires that the nursing staff be able to identify patients who might pose a suicide risk; that they be aware of existing hospital and emergency room policies and procedures regarding suicide prevention within the emergency room setting; that they properly assess, monitor supervise and take appropriate measures to care for patients who pose a suicide risk. Such measures include removal of materials that might be used for suicide and use of a "safe room." Additionally, the findings and assessments of the emergency room nurses should be adequately charted.

It is my opinion, based upon my review, that there is evidence of negligence by the Middlesex Hospital nursing staff. It is my opinion that the emergency room nursing staff violated the standard of care in a number of ways, including: failing to properly and adequately assess Gloria Hall's condition after her initial presentation; failing to identify Gloria Hall as a suicide risk in light of her behavior and past history; failing to properly supervisor and/or monitor Gloria Hall in light of her presenting and continued behavior; allowing the patient to have access to materials that could be used for strangulation; failing to properly and timely observe the patient, in accordance with hospital policies and general policies of emergency department medicine; failing to place the patient in a "safe room" or failing to make the emergency department examination room in fact a "safe room"; failing to obtain medical records of prior admissions indicating suicidal ideation; relying on the statement of the patient, who was clearly under the influence of alcohol and/or drugs, that she was not suicidal; misrepresenting the times that the nurse allegedly examined the patient, when, in fact, records reveal that the patient was not observed in accordance with the timing necessary under these situations; and removing the body and all evidence from the examination room before a reasonable and thorough investigation could be conducted to determine what happened to the patient.

My opinions are based upon my education, training and experience in providing emergency medicine nursing services and upon my review of the information supplied to me as of this time. I reserve the right to supplement and/or amend my opinions as additional information becomes available to me.

**EXHIBIT B**

**FULL AND FINAL RELEASE OF ALL CLAIMS AND CONFIDENTIALITY AGREEMENT**

For and in consideration of payment to me of the sum of **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)** to be paid in full upon execution of this release and other good and valuable consideration, I, **PATRICIA A. HALL-JEMISON, ADMINISTRATRIX OF THE ESTATE OF GLORIA HALL** ("Releasor"), being of lawful age, have released and discharged, and by these presents do for myself and my heirs, administrators, executors, successors, executors, successors and assigns, release, acquit and forever discharge **MIDDLESEX HOSPITAL, ON ASSIGNMENT STAFFING SERVICES, INC., EVANSTON INSURANCE COMPANY and MARKEL CORPORATION**, their successors, assigns, agents, servants employees, medical staff, representatives, affiliates, insurers, reinsurers and attorneys ("Releasees") from any and all actions, causes of action, claims or demands for damages, costs, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of, any and all known or unknown personal injuries to **GLORIA LISA HALL,** resulting or arising out of or in any way connected with an incident occurring on or about October 12, 2011 and subject of a lawsuit brought returnable at the Superior Court for the Judicial District of Middlesex at Middletown, Docket No: MMX-CV-13-6010510-S (hereinafter the "alleged incident"), which lawsuit is being withdrawn as further consideration for this Release.

No promise or inducement which is not herein expressed has been made to me and in executing this Release I do not rely upon any statement or representation made by any person, firm or corporation hereby released, or any agent, physician, doctor or any other person

representing them or any of them, concerning the nature, extent or duration of said damages or losses or the legal liability therefor.

I understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

I further represent and warrant that, with the exception of a potential Medicare lien discussed below as well as lien(s) in favor of the State of Connecticut, I am not aware of any lien or right to repayment (collectively, a "lien"), governmental or otherwise, whether valid or invalid, that has been or could be asserted at any time by any person or private of governmental entity for compensation or payment for any benefits, or for goods or services or payment thereof, including, without limitation, medical care or treatment, given or rendered to Gloria Lisa Hall, or that might be provided in the future. I acknowledge and agree that in the event that any such liens are asserted or exist at any time under any federal or state statute or regulation or under any contract or other applicable law, the resolution of all issues concerning such liens, including the satisfaction of all valid liens, shall be my sole responsibility and shall not be the responsibility of any of the Releasees.

I understand that as the result of the receipt of Medicare benefits by Gloria Hall, that there may be a lien applicable to the funds being paid in consideration for this General Release or an obligation to reimburse Medicare for Medicare benefits paid to or on behalf of Gloria Hall (the "Medicare lien"). I agree to defend and indemnify the Releasees in the event that any lien or claim, including without limitation, any claim, liability or penalty under the Medicare Secondary Payer Act (42 U.S.C. § 1395y(b)(2) et seq.), is asserted against any or all of them for compensation for benefits, goods or services or payment thereof, including without limitation for

medical care or treatment provided to Gloria Hall, or for the failure to satisfy any lien, or in the event that any claim is asserted arising out of the payment of the consideration set forth in this General Release.

I further understand and acknowledge that under the Medicare Secondary Payer Act, Medicare benefits and coverage is secondary to sums or benefits paid under liability insurance, such as the sums being paid in consideration for this General Release. I further understand that Medicare may demand reimbursement from us if Medicare pays any medical expenses that should have been paid out of the proceeds of this General Release. I acknowledge that this General Release shall remain in full force and effect regardless of any effect that this General Release or the payment reflected in it might have on future Medicare benefits or my obligations to Medicare. I represent that I have conferred with an attorney of my choice concerning my rights and obligations with respect to Medicare and that I have not relied upon any representations or advice by any of the Releasees or any representative thereof concerning my rights and obligations with respect to Medicare.

The Releasor herein further agrees that the terms and conditions of this settlement and all matters pertaining thereto are confidential in nature and therefore she agrees not to reveal or publicize or authorize or encourage the revealing or publication by others of any information with respect to this matter, except as required by law, including disclosure of the terms of this General Release as reasonably necessary in connection with any related Probate Court proceedings. This document is confidential and shall not be provided to anyone other than the parties to this litigation, their counsel and the defendants' insurer(s) except pursuant to a lawful subpoena or court order, or except as expressly provided for below.

Notwithstanding thc foregoing, the parties agree that the confidentiality agreement set forth in this paragraph shall not be deemed to be breached by Releasors' disclosure of this document and/or the terms of this Agreement to immediate family members, accountant, attorney, the Probate Court, any bonding insurance company or financial institution holding the settlement funds referenced herein, or financial planner as may be necessary or desirable in order for to receive financial or legal advice, or to any taxing authority.

Notwithstanding the foregoing, the parties agree that the confidentiality agreementset forth in this paragraph shall not be deemed to be breached by the Releasees' disclosure of this document and/or the terms of this Agreement in the ordinary course of conducting its/ their business, including the defendants' insurance carrier in the course of administering claims and managing accounting personnel, senior management, reinsurer(s) and external auditors, and for the purposes of the defendants' insurance carrier and attorneys' pursuit of any indemnification action related to the alleged incident.

The consideration for this confidentiality agreement between the parties hereto are the mutual promises of the Releasors and the Releasees. There is no monetary consideration for the confidentiality agreements contained in this document.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this Release are contractural and not a mere recital.

I further state that I have carefully read the foregoing Release and know the contents thereof, and I sign the same as my own free act.

SIGNED AT EAST HARTFORD THIS 25th DAY OF NOV., 2013.

WITNESSES

Mark S. Jemison II
MARK S. JEMISON II

Thomas Cartelli

RELEASOR

Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Hall

ACKNOWLEDGEMENT

On this 25th day of November, 2013, before me personally appeared Patricia A. Hall-Jemison, Administratrix of the Estate of Gloria Hall, signer and sealer of the foregoing instrument and acknowledged the same to be her free act and deed, before me.

Commissioner of Superior Court
~~Notary Public~~ THOMAS CARTELLI, Esq.

~~Commission Expires on~~ ________

I hereby acknowledge and agree to the terms of the foregoing Release and Confidentiality Agreement.

JEFFREY LEMKIN
Middlesex Hospital