**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------   x
MIDDLESEX HOSPITAL,               :
                                  :
         Plaintiff,               :   Civil No. 3:14-cv-1138(AWT)
                                  :
v.                                :
                                  :
ON ASSIGNMENT STAFFING SERVICES,  :
INC.,                             :
                                  :
         Defendant.               :
-------------------------------   x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Middlesex Hospital, brings claims against On Assignment Staffing Services, Inc. ("On Assignment") for contractual indemnification (First Count), breach of contract (Second Count) and common law indemnification (Third Count). Defendant On Assignment moves for summary judgment against Middlesex Hospital as to all three counts. For the reasons set forth below, the defendant's motion for summary judgment is being granted.

### I.   FACTUAL BACKGROUND

On or about April 22, 2005, the parties entered into a "Temporary Staffing Agreement" ("2005 Staffing Agreement"). On June 30, 2011, On Assignment sent Middlesex Hospital via e-mail a new staffing agreement ("2012 Staffing Agreement"). Middlesex Hospital informed On Assignment that it "'will sign the new

staffing agreement' and that Middlesex Hospital then had an opening for an ER [Emergency Room] nurse." (Local Rule 56(a)(1) Statement of On Assignment Staffing Services, Inc. (Doc. No. 22) ("Rule 56(a)(1) Statement") at ¶ 9; Local Rule 56(a)(2) Statement of Middlesex Hospital (Doc. No. 29) ("Rule 56(a)(2) Statement") at ¶ 9-11.) On July 8, 2011, On Assignment sent Middlesex Hospital a profile for Gary Hinds, RN, for consideration for the ER opening. By July 13, 2011, Middlesex Hospital notified On Assignment that it was accepting Hinds to work at Middlesex Hospital and that he would start on August 8, 2011. On Assignment emailed Middlesex Hospital the confirmation documentation for Hinds on July 15, 2011. Middlesex Hospital advised On Assignment that it needed more information regarding the shifts that Hinds would work. On July 19, 2011, On Assignment emailed Middlesex Hospital a revised confirmation. On July 20, 2011, Middlesex Hospital signed the "Confirmation of Acceptance", which stated, in pertinent part:

> This correspondence confirms the placement of Gary Hinds for the position of Registered Nurse at your facility pursuant to the Agreement between On Assignment Healthcare Staffing and Middlesex Hospital dated 4/22/2005.

(Rule 56(a)(1) Statement at ¶ 12; Rule 56(a)(2) Statement at ¶ 12.) On or about August 8, 2011, Hinds began a 13-week assigned term performing nursing services at Middlesex Hospital.

On the evening of October 11, 2011, Hinds provided nursing care to a number of patients, including a woman named Gloria Hall. Hall had been transported to Middlesex Hospital by ambulance in connection with a Police Emergency Examination Request and was admitted at 9:16 p.m.. The charge nurse, Timothy Reynolds, performed a nursing assessment that included assessment of the patient's suicide risk, which Reynolds rated as low. Subsequently, the patient was assigned to Hinds. In the early morning of October 12, 2011, Hinds was the first person to attend to Hall after he found her unresponsive. Efforts to resuscitate her were unsuccessful. Within days, Middlesex Hospital notified On Assignment that it would not be retaining Hinds for the remainder of the assigned 13-week term.

On or about August 1, 2012, Middlesex Hospital executed the 2012 Staffing Agreement that On Assignment had sent to it on June 30, 2011. On October 3, 2012, On Assignment executed the 2012 Staffing Agreement and emailed the fully-executed agreement to Middlesex Hospital.

The 2012 Staffing Agreement contained the following language:

> The terms of this Staffing Agreement ("Agreement") are agreed to on **June 30, 2011** by and between On Assignment Staffing Services, Inc., d/b/a On Assignment Healthcare Staffing ("On Assignment") and **MIDDLESEX HOSPITAL** ("Client") (each a "Party" and collectively the "Parties").

(Appendix to Local Rule 56(a)(1) Statement (Doc. No. 22-1)

("APP.") at Page 72. (emphasis in original).) It also contains

the following merger clause:

> 7.2 Complete Agreement and Amendment. This Agreement,
> including all Attachments, constitutes the complete and
> Integrated understanding of the Parties with respect to the
> subject matter of this Agreement and supersedes all prior
> understandings and agreements, whether written or oral,
> with respect to the same subject matter. This agreement may
> only be amended (including amendments to the pricing set
> forth in the Attachments) by a written agreement duly
> signed by persons authorized to sign agreements on behalf
> of each Party.

(APP. at Page 73.)

In September 2013, Hall's estate commenced a lawsuit

against Middlesex Hospital and On Assignment alleging negligence

on the part of Middlesex Hospital and On Assignment.  In

December 2013, Middlesex Hospital reached a settlement with

Hall's estate, and in January 2014, the estate withdrew its

lawsuit against both Middlesex Hospital and On Assignment.  In

July 2014, Middlesex Hospital commenced the instant action in

Connecticut Superior Court, and On Assignment removed the action

to federal court.

## II.   LEGAL STANDARD

A motion for summary judgment may not be granted unless the

court determines that there is no genuine issue of material fact

to be tried and that the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law.

Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an

asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could

reasonably find for the [nonmovant]." <u>Anderson</u>, 477 U.S. at 252.

### III.  DISCUSSION

#### A.  Contractual Indemnification (First Count)

Middlesex Hospital contends that the 2005 Staffing Agreement applies to the dispute between the parties.  On Assignment contends that Middlesex Hospital has based its claim for contractual indemnification on the wrong agreement because "the 2012 Staffing Agreement superseded the April 2005 'Temporary Staffing Agreement' . . . ."  (Memorandum of Law in Support of Motion of On Assignment Staffing Services, Inc. for Summary Judgment (Doc. No. 21-1) ("Summary Judgment Memo") at 12.)

It is a "bedrock legal principle[] that . . . the interpretation of a written document is a question of law." <u>Cruz v. Visual Perceptions, LLC</u>, 311 Conn. 93, 104 n. 11 (2014). Under Connecticut Law,

> It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. . . . When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction. . . . [A] court cannot import into [an] agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms.

<u>Yellow Book Sales & Distribution Co. v. Valle</u>, 311 Conn. 112,

119 (2014) (alterations in original) (internal quotation marks

omitted) (quoting <u>Levine v. Massey</u>, 232 Conn. 272, 278 (1995)).

> In determining whether a contract is ambiguous, the words
> of the contract must be given "their natural and ordinary
> meaning." <u>Kelly v. Figueiredo</u>, 223 Conn. at 31, 35, 610
> A.2d 1296 (1992). A contract is unambiguous when its
> language is clear and conveys a definite and precise
> intent. <u>Levine</u>, 232 Conn. at 272. "The court will not
> torture words to impart ambiguity where ordinary meaning
> leaves no room for ambiguity." (Internal quotation marks
> omitted.) Id., at 279, 654 A.2d 737. "Moreover, the mere
> fact that the parties advance different interpretations of
> the language in question does not necessitate a conclusion
> that the language is ambiguous." (Internal quotation marks
> omitted.) <u>Stephan v. Pennsylvania General Ins. Co.,</u> 224
> Conn. at 758, 764, 621 A.2d 258 (1993).

<u>United Illuminating Co. v. Wisvest-Connecticut, LLC</u>, 259 Conn.

665, 670 (2002). "It is axiomatic that a party is entitled to

rely upon its written contract as the final integration of its

rights and duties." <u>Yellow Book</u>, 311 Conn. at 119 (internal

quotation marks omitted) (quoting <u>Levine</u>, 232 Conn. at 279).

The 2012 Staffing Agreement contains the following merger

clause:

> **7.2 Complete Agreement and Amendment.** This Agreement, including
> all Attachments, constitutes the complete and integrated
> understanding of the Parties with respect to the subject matter
> of this Agreement and supersedes all prior understandings and
> agreements, whether written or oral, with respect to the same
> subject matter. This Agreement may only be amended (including
> amendments to the pricing set forth in the Attachments) by a
> written agreement duly signed by persons authorized to sign
> agreements on behalf of each Party.

(Summary Judgment Memo at 12.)  Thus, the 2012 Staffing Agreement contains clear and unambiguous language that it supersedes all prior understandings and agreements, whether written or oral, "with respect to the same subject matter". Section 1.1 of the 2005 Staffing Agreement and the 2012 Staffing Agreement both state: "Provision of Personnel.  On Assignment will refer to Client qualified and skilled temporary personnel meeting the requirements set forth in the Attachments ('Personnel')."  (APP. at Pages 102, 129.)

The 2012 Staffing Agreement has an effective date of June 30, 2011 but was not fully executed until October 3, 2012. Nothing prevents parties from contracting for an effective date that precedes the execution of an agreement.  See Beastie Boys v. Monster Energy Co., 983 F. Supp. 2d 354, 362 (S.D.N.Y. 2014) ("Page 1 of the Assignment Agreement expressly states that it is effective as of December 2, 1999.  Contract law gives effect to such retroactive arrangements.").

Middlesex Hospital emphasizes that the Confirmation of Agreement "confirms the placement of Gary Hinds .  . [is] pursuant to the [2005 Staffing] Agreement . . . ."  (APP. at Page 124.)  It argues that because the Confirmation of Agreement "is dated after the effective or claimed retroactive date of the 2012 Staffing Agreement, a genuine issue of fact is raised with respect to the parties' express intentions as to which of the

agreements was controlling." (Memorandum of Law in Opposition to Motion for Summary Judgment (Doc. No. 28) ("Opposition Memo") at 5.)

Middlesex Hospital's reliance on the Confirmation of Acceptance is misplaced. First, the language stating that Hinds was being placed pursuant to the 2005 Staffing Agreement does not reflect a decision by the parties to reject the 2012 Staffing Agreement. At the time the Confirmation of Acceptance was executed, the 2012 Staffing Agreement had not been executed by either party, so there was no other binding agreement pursuant to which Hinds could have been placed.

Second, Middlesex Hospital concludes that the fact that the 2012 Staffing Agreement has a retroactive date which precedes the date of the Confirmation of Acceptance makes the "Confirmation the most recent agreement entered into by the parties . . . ." (Opposition Memo at 5.) But the 2012 Staffing Agreement was not fully executed until October 3, 2012, i.e. after the July 20, 2011 Confirmation of Acceptance, making it "the most recent agreement" entered into by the parties.

Third, while the 2012 Staffing Agreement contains a merger clause stating that the 2012 Staffing Agreement "supersedes all prior understandings and agreements," the Confirmation of Acceptance does not contain any comparable language. "When the parties to a contract enter into a new agreement that expressly

supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement." Health-Chem Corp. v. Baker, 915 F.2d 805, 811 (2d Cir. 1990).

Middlesex Hospital alleges that it is "entitled to indemnification and reimbursement for all costs of defense and for any losses incurred, including indemnity sums paid in settlement of the lawsuit, for On Assignment's negligence contributing to the losses and damages" claimed by Hall's estate. (Compl., Count One, ¶ 18 (APP. at Page 16).) Paragraph 5.1 of the 2012 Staffing Agreement[1] provides that

> On Assignment will indemnify, defend and hold harmless Client . . . from (i) negligent acts or omissions or willful misconduct of On Assignment or any of the On Assignment indemnitees; or (ii) breach of this Agreement by the On Assignment indemnitees.

(APP. at Pages 72-23.)

The plain and unambiguous language of Section 5.1 reflects the parties' intent that On Assignment is not obligated to indemnify Middlesex Hospital for any negligent acts by Hinds for two reasons. First, Paragraph 5.1 obligates On Assignment to indemnify Middlesex Hospital only with respect to certain acts or omissions of On Assignment or any of the "On Assignment Indemnitees". Hinds is not an On Assignment Indemnitee. "On

---

[1] The language in Section 5.1 of the 2005 Staffing Agreement is not materially different.

Assignment Indemnitees" is defined in Paragraph 5.2 as "On Assignment and its Affiliates and their respective, directors, officers, employees (but in no event to be interpreted to include the Personnel) and agents . . . ." (2012 Staffing Agreement (Doc. No. 22-3, Ex. G) ¶ 5.2.) Thus, the definition of "On Assignment Indemnitees" expressly excludes "Personnel", and Hinds is covered by the definition of "Personnel" in Paragraph 1.1.. Accordingly, On Assignment's indemnification obligation for losses attributable to the acts of an On Assignment indemnitee does not cover any acts of Hinds. Second, Paragraph 5.2 provides that the client, i.e. Middlesex Hospital, will indemnify On Assignment for any losses attributable, <u>inter alia</u>, to the "work, work product, acts or omissions of the Personnel while those Personnel are on assignment with Client . . . ." (<u>Id.</u>) The plain language of Paragraph 5.2 covers the instant situation, because Hinds' acts with respect to Hall occurred while he was on assignment with Middlesex Hospital.

Middlesex Hospital concedes that "the indemnification clauses of the agreements entered into appear facially clear on preliminary review." (Opposition Memo at 18.) But it contends that "a genuine issue of material fact has been raised as to the parties' actual intentions with respect to indemnification" because the 2012 Staffing Agreement "did not obligate [Middlesex] Hospital to obtain coverage for the acts or

omissions of Hinds . . . [but] [r]ather, On Assignment was alone obliged to procure . . . professional liability coverage." (Opposition Memo at 18-19.) Middlesex Hospital improperly conflates an obligation to obtain insurance coverage with an obligation to indemnify. It provides no basis for a conclusion that the requirement that On Assignment maintain commercial general liability insurance coverage as set forth in Paragraph 5.3 means that On Assignment must indemnify Middlesex Hospital for negligent acts by Personnel.

Therefore, the motion for summary judgment is being granted as to the First Count.

**B. Breach of Contract – Insurance (Second Count)**

Middlesex Hospital contends that On Assignment violated Paragraph 5.3 of the 2012 Staffing Agreement. Paragraph 5.3 provides:

> **5.3 Insurance.** On Assignment will maintain Commercial General Liability insurance policies in an amount not less than $1,000,000 per occurrence and $2,000,000 general aggregate and maintain Workers' Compensation Insurance insuring all On Assignment employees (including the Personnel) in accordance with the statutory requirements of all states where work under this Agreement is performed by On Assignment employees. On Assignment will maintain in full force and effect during the term professional liability insurance coverage in an amount not less than $1,000,000 per occurrence and $3,000,000 general aggregate for Personnel employed by On Assignment. On

> Assignment will provide Client with relevant
> Certificates of Insurance upon request.

(APP. at Page 73.)

Middlesex Hospital alleges that On Assignment breached this provision because it "(a) failed or refused to demand that its carrier defend and indemnify Middlesex Hospital . . . and (b) failed to otherwise honor the insurance provision . . . ." (Compl., Second Count, ¶ 15 (APP. at Page 18).) However, Paragraph 5.3 does not require On Assignment to demand that its insurance carrier defend and indemnify Middlesex Hospital. It requires only that On Assignment maintain professional liability insurance for "Personnel." On Assignment fulfilled this obligation by procuring professional liability insurance for "Personnel," including Hinds.

Therefore, the motion for summary judgment is being granted as to the Second Count.

## C. Common Law Indemnification (Third Count)

Middlesex Hospital contends that, even if it has no right to be indemnified pursuant to the 2012 Staffing Agreement, it is entitled to common law indemnification because "[a]ny losses and damages incurred by the Estate of Gloria Hall as alleged in the original Complaint were . . . caused by the active negligence and carelessness of On Assignment acting through its employees, servants, agents or apparent agents, including Gary Hinds . . . ." (Compl., Third Count, ¶ 16

(APP. at Page 19).)  To prevail on a claim for common law

indemnification:

> an out-of-pocket defendant must show that: (1)
> the party against whom the indemnification is
> sought was negligent; (2) that party's active
> negligence, rather than the defendant's own
> passive negligence, was the direct, immediate
> cause of the accident and the resulting injury
> ...; (3) the other party was in control of the
> situation to the exclusion of the defendant
> seeking reimbursement; and (4) the defendant did
> not know of the other party's negligence, had no
> reason to anticipate it, and reasonably could
> rely on the other party not to be negligent.

Physicians for Women's Health, LLC v. Essent Healthcare of CT, No.

LLICV095006214S, 2011 WL 2150648, at *3 (Conn. Super. Ct. May 4, 2011)

(citing Smith v. New Haven, 258 Conn. 56, 66, 779 A.2d 104 (2001)).

Middlesex Hospital contends that On Assignment was negligent

because Hinds was an agent of On Assignment and his negligent conduct

is attributable to On Assignment.  To demonstrate that Hinds was an

agent of On Assignment, Middlesex Hospital must show that On

Assignment had "the right to control the means and method of [Hinds']

work." Cefaratti v. Aranow, 154 Conn. App. 1, 29 n.18 (2014) (quoting

Beaverdale Memorial Park, Inc. v. Danaher, 127 Conn. 175, 179 (1940)),

cert. petitions granted on other grounds, 315 Conn. 919 (2015).

Middlesex Hospital's argument that Hinds was an agent of On

Assignment is contrary to the plain language of the 2012 Staffing

Agreement.  The 2012 Staffing Agreement provides:

> **3. CONTROL OF WORK.**  Personnel will perform work
> for Client under the Client's direction, control
> and supervision.  Personnel are not authorized to
> incur any legal obligation on behalf of On
> Assignment or to execute any agreement or
> approval, exercise any authority or otherwise
> sign any document on behalf of On Assignment.

(APP. at Page 72.)  Thus, the parties agreed that Hinds would perform his work under the direction, control and supervision of Middlesex Hospital, not On Assignment.

Middlesex Hospital contends that there is a genuine issue of material fact "as to whether this direction, control and supervision pertained to the superficial . . . elements of Hinds's work, as opposed to the performance of his professional nursing duties, and specifically, the means and methods by which he performed these duties."  (Opposition Memo at 7.)  Middlesex Hospital elaborated on its distinction between "superficial" and "professional nursing duties" as follows:

> [W]hile the Hospital could mandate Hinds's schedule, his hours of work, the number of patients assigned to him during a particular shift, and the area of the Hospital in which he was to perform his duties, once he assumed the care of any particular patient, establishing a healthcare provider-patient relationship, Hinds alone determined how to treat her and was singularly 'responsible for the way and manner' in which he exercised his professional judgment.

(Opposition Memo at 13.)  However, even if the argument set forth above were persuasive, Middlesex Hospital does not need to demonstrate that Hinds was not its agent.  Rather, to impose liability on On Assignment, Middlesex Hospital must show that Hinds was acting as an agent of On Assignment when Hinds performed nursing services for Hall.  Middlesex Hospital has provided no evidence tending to establish that point.

Moreover, even if Hinds were an agent of On Assignment, the common law indemnification claim still fails because Paragraph 5.2 provides that "On Assignment will not be liable to Client [i.e. Middlesex Hospital] . . . for . . . losses [that] relate to or arise from . . . (ii) work, work product, acts or omissions of the Personnel [Hinds] while those Personnel are on assignment with Client [Middlesex Hospital]." (APP. at Page 73.) Middlesex Hospital thus gave up its right to pursue indemnification from On Assignment under the circumstances present here. Nothing prevented Middlesex Hospital from waiving this right. "Under Connecticut law, a party to a contract may waive any defenses or rights it has against the other party to the contract, and such a waiver will be enforced if it is clear and unambiguous." Albany Ins. Co. v. United Alarm Servs., Inc., 194 F. Supp. 2d 87, 91 (D. Conn. 2002). Here, the waiver by Middlesex Hospital is clear and unambiguous, and thus it is enforceable.

Therefore, the motion for summary judgment is being granted as to the Third Count.

**IV. CONCLUSION**

For the reasons set forth above, the Motion of On Assignment Staffing Services, Inc. for Summary Judgment (Doc. No. 21) is hereby GRANTED. Judgment shall enter in favor of On Assignment with respect to all of the plaintiff's claims.

The Clerk shall close this case.

It is so ordered.

Signed this 21st day of September 2017, at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge
